**Jeany Copfer BASSO, for herself, and Dawn Marie Basso, an infant, through her Guardian, Jeany Copfer Basso, Plaintiffs-Appellees,**

v.

**UTAH POWER AND LIGHT COMPANY, a corporation, Defendant-Appellant.**

**No. 72–1255.**

United States Court of Appeals, Tenth Circuit.

April 10, 1974.

Marvin J. Bertoch, of Ray, Quinney & Nebeker, Salt Lake City, Utah (Sidney G. Baucom, of Baucom, Gordon & Porter, Salt Lake City, Utah, on the brief), for defendant-appellant.

Jackson Howard, of Howard, Lewis & Petersen, Provo, Utah, for plaintiffs-appellees.

Before LEWIS, Chief Judge, DOYLE, Circuit Judge and BRATTON, District Judge.

WILLIAM E. DOYLE, Circuit Judge.

This appeal involves a wrongful death action in which the United States District Court for the District of Utah entered judgment in favor of plaintiffs and against defendant, Utah Power and Light Company, in the total amount of $225,447.12. The case had been tried to the court without a jury.

Defendant Power Company filed a notice of appeal on February 23, 1972 and a separate motion to remand the cause to the District Court with directions to vacate judgment for lack of jurisdiction, the contention being that plaintiffs and defendant were all citizens of Utah so that requisite diversity of citizenship was lacking.

After considering the statements of counsel at oral argument, this court on May 18, 1972, remanded the cause to the District Court for the sole purpose of hearing and determining the federal jurisdiction issue. The trial court was directed to make specific findings and conclusions with respect to the existence of diversity of citizenship; the essential question was whether the Utah Power and Light Company had its principal place of business in the state of Utah. If so, it could not be sued in U. S. Court by a Utah citizen because it would be under U. S. statute a Utah citizen. This court retained jurisdiction of the matter following completion of the District Court hearing.

No report was received from the parties or their attorneys concerning the result of any proceeding upon remand. Therefore, a further order was issued on

October 10, 1973. This required the parties to show cause why the case at bar should not be summarily reversed with directions to dismiss for lack of jurisdiction. On October 25, 1973, the plaintiffs, through their attorneys, filed with this court a copy of the Restated Findings of Fact and Conclusions of Law and Additional Findings of Fact and Conclusions of Law, composed by the plaintiffs' attorneys and signed by the District Court Judge. The defendant filed a memorandum objecting to these Additional Findings of Fact and Conclusions of Law and renewing its motion to remand the cause with directions to vacate judgment.

The sole question submitted in the present posture is whether the federal district court had jurisdiction under 28 U.S.C. § 1332, the diversity of citizenship statute. If the requisite diversity did not exist, did the defendant corporation's subsequent conduct waive the jurisdictional requirements by its failure to raise that issue in the district court and its failure to produce any evidence of lack of diversity before final judgment was rendered?

### I.

Under 28 U.S.C. § 1332(c), a "corporation" is "deemed a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." Defendant asserts that the Utah Power and Light Company clearly has its principal place of business in the state of Utah, thus making it a "citizen" of Utah. It supports this contention with sworn affidavits and answers to interrogatories revealing that all eleven of its general officers reside in Utah; that the executive and administrative offices of the defendant company are located in Salt Lake City, Utah; that at least 75% of its total operating revenue and kilowatt sales are made in Utah and that almost all of its employees reside and work in Utah. From this it appears that virtually all of its activity centers in Utah and this includes management and distribution as well as generation.

At the hearing on remand, the District Court refused to allow counsel for defendant to present any evidence which would establish the location of the company's principal place of business. In fact, the judge stated at the outset of the hearing that he intended to thwart what he considered to be defendant's counsel's "carefully calculated plans." (Record, Supp. Vol. No. 2, p. 6). The following exchange occurred at the hearing:

Counsel for Defendant: Now, in response to that [the Circuit Court's mandate] I have brought here for the second time a witness, and I have exhibits to present on that issue if the Court desires to hear it.

The Court: Well, not today; perhaps not ever.

Counsel for Defendant: Since the court knows the disposition of the Circuit with respect to the law that I have referred to, the Supreme Court cases and the Circuit cases, there is really nothing for me to argue on that point.

The Court: All right; Mr. Howard [plaintiffs' counsel], you get me up some findings and conclusions covering this precise situation in all of its ramifications and let me look at it, and give me your best cases on it.

Mr. Howard: All right, your honor.

Counsel for Defendant: Your Honor, is the court going to give me the opportunity to present evidence on the point the Circuit asked for a determination on?

The Court: I don't know what I am going to do. (Record, Supp. Vol. No. 2, pp. 24–25).

Without hearing defendant's evidence concerning "principal place of business," the District Court found and concluded that sufficient diversity existed to satisfy the jurisdictional requirements.

Plaintiffs do not dispute defendant's factual assertion that the Utah Power and Light Company has its principal place of business in the state of Utah. At oral argument before this Court, counsel for the plaintiffs stipulated to this fact, stating that he had no evi-

dence to refute defendant's sworn affidavit.

Plaintiffs argue, however, that, by failing to rebut the allegations contained in the complaint, defendant admitted the existence of federal jurisdiction. Plaintiffs also contend that defendant's counsel intentionally failed to raise the issue of lack of jurisdiction until after final judgment was entered, despite his prior knowledge that diversity did not exist. Plaintiffs argue that this tactic estopped defendant from making a belated attack on the jurisdictional issue.

Defendant claims that its failure to raise an earlier objection to jurisdiction was based upon a mistake of law. Defendant's counsel said that he had initially believed that participation in the proceedings had waived defendant's right to make a subsequent objection on the basis of lack of jurisdiction.

## II.

■■■ Rule 12(h)(3) of the Federal Rules of Civil Procedure provides that "whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action." A court lacking jurisdiction cannot render judgment but must dismiss the cause *at any stage* of the proceedings in which it becomes apparent that jurisdiction is lacking. Bradbury v. Dennis, 310 F.2d 73 (10th Cir. 1962), cert. denied, 372 U. S. 928, 83 S.Ct. 874, 9 L.Ed.2d 733 (1963). The party invoking the jurisdiction of the court has the duty to establish that federal jurisdiction does exist, Wilshire Oil Co. of Texas v. Riffe, 409 F.2d 1277 (10th Cir. 1969), but, since the courts of the United States are courts of limited jurisdiction, there is a presumption against its existence. City of Lawton, Okla. v. Chapman, 257 F.2d 601 (10th Cir. 1958). Thus, the party invoking the federal court's jurisdiction bears the burden of proof. Becker v. Angle, 165 F.2d 140 (10th Cir. 1947).

■■■ If the parties do not raise the question of lack of jurisdiction, it is the duty of the federal court to determine the matter *sua sponte.* Atlas Life Insurance Co. v. W. I. Southern Inc., 306 U.S. 563, 59 S.Ct. 657, 83 L.Ed. 987 (1939); Continental Mining and Milling Co. v. Migliaccio, 16 F.R.D. 217 (D.C. Utah 1954). Therefore, lack of jurisdiction cannot be waived and jurisdiction cannot be conferred upon a federal court by consent, inaction or stipulation. California v. LaRue, 409 U.S. 109, 93 S.Ct. 390, 34 L.Ed.2d 342 (1972); Natta v. Hogan, 392 F.2d 686 (10th Cir. 1968); Reconstruction Finance Corp. v. Riverview State Bank, 217 F.2d 455 (10th Cir. 1955).

■■■ Plaintiffs' position is that the defendant has already admitted the jurisdictional facts (and that this admission overrides every other factor), so that the existence of diversity of citizenship may not now be questioned. They cite DiFrischia v. New York Central Railroad Company, 279 F.2d 141 (3rd Cir. 1960), in which the Third Circuit stated:

[T]he defendant had its opportunity to have the issue [lack of jurisdiction] heard and to present its position but chose to admit the allegations of plaintiff's complaint. Thereafter it fully participated in the appropriate discovery and pretrial procedures preparatory to trial of the action on the merits. Having done so, a further attempt to amend its answer to return to its previous defense of lack of diversity could certainly not be made of right. Allowance of such an amendment under the circumstances would be an abuse of discretion. (Citations omitted.) A defendant may not play fast and loose with the judicial machinery and deceive the courts.

279 F.2d at 144.

The court's reasoning in *DiFrischia* is not applicable at bar. There the court found a party bound by an *admission of fact on which the diversity jurisdiction of the district court depended.* In the instant case, defendant admitted only that it is "a corporation duly organized

and existing under the laws of the state of Maine and is engaged, among other things, in the business of supplying electricity in the State of Utah and specifically to Carbon County, Utah." This factual allegation, not objected to by counsel for defendant, does not admit the defendant's principal place of business is a state *other than* Utah. On the contrary, defendant's admission implies that its primary business activity is centralized in the state of Utah. On its face then, plaintiff's complaint manifests a lack of diversity jurisdiction. Although defendant did not present evidence to support dismissal for lack of jurisdiction, the burden rested with the plaintiffs to prove affirmatively that jurisdiction did exist. F & S Construction Co. v. Jensen, 337 F.2d 160 (10th Cir. 1964). The defendant's failure to raise the issue before final judgment did not amount to a waiver, since a court may dismiss a case for lack of jurisdiction at any stage of the proceeding.

### III.

We are mindful that it appears unjust to allow a defendant to make an attack on jurisdictional grounds after final judgment has been entered, but an opposite result would unlawfully expand the jurisdiction of the federal courts by judicial interpretation. This cannot be done. American Fire and Casualty Co. v. Finn, 341 U.S. 6, 71 S.Ct. 534, 95 L. Ed. 702 (1951). In the *Finn* case, the Supreme Court held that a defendant who removed a case to federal court and then received an adverse judgment there

was not estopped from attacking his own prior removal on the grounds that the federal court had lacked diversity jurisdiction to hear the matter. The Supreme Court reasoned that the jurisdiction of the federal courts is limited and must be carefully guarded against expansion by judicial interpretation or by prior action or consent of the parties. The Supreme Court explained that parties to an action can never stipulate to the existence of federal jurisdiction because this would give an additional power to the district courts which Congress had expressly denied. 341 U.S. at 17–18, 71 S.Ct. 534.

In a case similar to the one at bar, where defendant's counsel did not plead lack of jurisdiction until after adverse judgment had been rendered, the Seventh Circuit discussed the present question thoroughly and ruled that it had no option other than dismissal.[1]

Whether, therefore, the defendant should be penalized for its failure to make a timely objection to jurisdiction is irrelevant to the essential question on appeal—that is, whether federal jurisdiction exists. We must determine that diversity of citizenship is indeed lacking in the case at bar. Since a party cannot waive jurisdictional requirements in federal court, defendant's initial acquiescence could not grant the District Court a power or jurisdiction which it did not otherwise possess. Therefore, the cause is remanded to the District Court with directions to vacate judgment. This dismissal is without prejudice to the plain-

---

1. The court said:

In reaching the conclusion that the court should have heard and determined the jurisdictional question, we are not unmindful that a trial court, as well as a reviewing court, may well be aggravated at the course of counsel which permits a cause to proceed to a point where an adverse decision is in prospect and then, for the first time, raise the question. Certainly, there is a duty imposed upon counsel to deal fairly and sincerely with the court and opposing counsel so as to conserve the time and expense of all, and that actions may be litigated in an orderly man-

ner. In the instant case it may be that counsel for the defendant made an unintentional mistake although such a situation is not easy to visualize. It is not difficult to conceive a case where the conduct of counsel by an intentional failure to raise the jurisdictional question in the beginning could well be termed reprehensible. In fact, counsel, under such circumstances, might properly be subjected to disciplinary action on the part of the court. This discussion, however, is inapposite to the question of jurisdiction.

Page v. Wright, 116 F.2d 449, 454–455 (7th Cir. 1940).

tiffs' right to pursue their remedy in a subsequent state proceeding.[2]

### IV.

All reasonable costs and expenses are to be assessed against defendant. We further determine that the plaintiffs are entitled to an attorneys' fee for work on this appeal. We find this in the amount of $2,500.00. This assessment of attorneys' fees is a justifiable sanction. In so ordering, we are cognizant of the traditional rule precluding the recovery of attorneys' fees in the absence of statute or enforceable contract providing for them. Fleischmann Distilling Corp. v. Maier Brewing Co., 386 U.S. 714, 87 S. Ct. 1404, 18 L.Ed.2d 475 (1967). However, there are some limited exceptions to the general rule when overriding considerations of justice so require. *See* Hall v. Cole, 412 U.S. 1, 93 S.Ct. 1943, 36 L.Ed.2d 702 (1973).

In Hall v. Cole, *supra*, the Supreme Court recognized the power of a federal court to award attorneys' fees as a punitive measure where an action or defense has been brought or maintained in bad faith. *See also* Universal Oil Products Co. v. Root Refining Co., 328 U.S. 575, 66 S.Ct. 1176, 90 L.Ed. 1447 (1946).

In the case at bar, we consider it appropriate to assess costs and attorneys' fees against the Utah Power and Light Company. In addition to actual court costs, plaintiffs-appellees' counsel is entitled to and is hereby awarded expenses of transportation together with food and lodging on each occasion that he was required to travel from Salt Lake City to Denver for the purpose of appearing before this court. The basis for this award is that these proceedings were the consequence of gross negligence on the part of the defendant-appellant which waited until after the adverse judgment had been rendered against it before it launched its jurisdictional attack.

Accordingly, the case is remanded to the District Court with directions to vacate judgment and assess costs and attorneys' fees against the defendant.

---

2. The Utah savings statute allows parties in plaintiffs' position to commence a new action within one year after a dismissal on procedural grounds. *See* Utah Code Annotated, Sec. 78–12–40 (1953), which states:

If any action is commenced within due time and a judgment thereon for the plaintiff . . . fails in such action or upon a cause of action otherwise than upon the merits, and the time limited either by law or contract for commencing the same shall have expired, the plaintiff, or if he dies and the cause of action survives, his representatives, may commence a new action within one year after reversal or failure.